## Campbell *versus* The Commonwealth.

84   187
157    16

84   187
163   532

1. Where upon a motion to quash an array of jurors it is alleged that the jury commissioners were not sworn at the time they selected the names of the jurors, and the court below finds as a matter of fact that they were sworn, this court will not disturb this finding where the evidence upon which the finding was had fails to disclose any manifest error.

2. To show the motive for murder and to explain the prisoner's connection therewith, it is competent for the Commonwealth to give evidence of the purposes, practices and objects of a society, organized for the commission of crime, and to prove that those who committed the murder were members of said organization, and that through its instrumentality it was committed.

3. A detective who joins a criminal organization for the purpose of exposing it, and bringing criminals to punishment, and honestly carries out that design, is not an accessory before the fact, although he may have encouraged and counselled parties who were about to commit crime, if in so doing he intended that they should be discovered and punished, and his testimony, therefore, is not to be treated as that of an infamous witness.

4. Under the 44th sect. of the Criminal Procedure Act, where one who is strictly an accessory before the fact is charged as a principal in an indictment, it is not necessary to state therein the manner in which or the means by which he accomplished the murder; it is sufficient if the charge be stated with such certainty that he may know what he is called upon to answer.

March 26th 1877.  Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.  SHARSWOOD, J., absent.

Error to the Oyer and Terminer of *Carbon county:* Of January Term 1877, No. 11.

Indictment of Alexander Campbell, who was jointly indicted with Hugh McGehan and James Carroll for the murder of John P. Jones.

Carroll and McGehan were tried and convicted for the murder of Benjamin F. Yost in Schuylkill county.  (See report of case *ante*, p. 107.)

The indictment read as follows :—

" In the Court of Oyer and Terminer and General Jail Delivery for the county of Carbon.  March Term 1876.

" County of Carbon, ss :—

" The grand inquest of the Commonwealth of Pennsylvania, inquiring for the county of Carbon, upon their respective oaths and affirmations do present that Alexander Campbell, Hugh McGehan and James Carroll, late of the said county, yeomen, on the 3d day of September A. D. 1875, at the county aforesaid and within the jurisdiction of this court, with force and arms, &c., in and upon the body of one John P. Jones, in the peace of God and the said Commonwealth then and there being, feloniously, wilfully and of their malice aforethought, did make an assault, and him, the said John P. Jones, then and there feloniously, wilfully and of their malice aforethought, did kill and murder, contrary, &c., &c."

[Campbell *v.* Commonwealth.

Campbell moved to quash this indictment for the following reasons :—

1. That it does not set forth the manner of the death of John P. Jones, or the means by which the killing was accomplished.

2. That the names which were put into the wheel from which the grand jury was drawn, which found the present indictment against the prisoner, were selected by the jury commissioners before they were sworn.

The Commonwealth demurred to the sufficiency of the matters contained in the first reason, and the court, Dreher, P. J., sustained the demurrer on the ground that since the Act of 31st March 1860, sect. 20, Purd. Dig. 380, pl. 21, it is not necessary to set forth in the indictment the manner in which or the means by which the death of the deceased was caused.

The Commonwealth traversed the matters of fact alleged in the second reason and averred that the jury commissioners were sworn before they selected the names which were put in the wheel from which the grand jury was drawn.

It was agreed by counsel that upon this motion to quash, the evidence taken January 18th 1876, in the case of the Commonwealth *v.* Michael Doyle, on the motion of said Michael Doyle to quash the array of petit jurors, should be given in evidence in the present case, and treated and considered in this present motion to quash the indictment, and for all other purposes in this case, so far as the same would be legal evidence, the same as if formally offered and heard at this time.

From this evidence it appeared that the jury commissioners and sheriff were sworn on the 17th day of November 1875, and the oath was filed in the prothonotary's office on the same day. A certified list of the names was filed in the prothonotary's office. In the certificate the commissioners said they selected and placed the names in the wheel on the 16th, 17th, 18th, 19th and 20th days of November 1875.

James A. Dinkey, clerk to the jury commissioners, testified that the commissioners met on the 16th, but did nothing in selecting the names of persons to fill the wheel. That he wrote the oath for the commissioners and sheriff, and ruled the paper for the list to be filed in the prothonotary's office, and the commissioners then adjourned to meet the next day, the 17th, on which day they again met and proceeded with the business of selecting names, and on the 19th and 20th they placed the same in the wheel.

Sheriff Breneiser also testified he thought the oath was administered to him and the commissioners together, and that it was in the afternoon of the 17th.

The court overruled the motion to quash the indictment, saying, "from this testimony of the sheriff and Dinkey, as to the time of commencing work and the manner of selecting the names, we are

satisfied that no actual selection of names was made until after the oath was administered and subscribed, and that all that was done by the commissioners before the oath was administered and subscribed was but preliminary to the selecting and placing the names in the wheel."

The defendant also moved to quash the array of petit jurors for the following reasons :—

1. That it did not appear from the record that the jurors were selected by persons having legal authority so to do.

2. That the persons who selected the names which were put in the wheel, from which the jury were to be drawn, made such selections without having been sworn or affirmed according to law.

The court likewise overruled this motion, saying that the record showed that the jurors were selected by the proper authorities, to wit, the jury commissioners, and that they were summoned by the sheriff, as appeared by the venire, and that the second reason was incorrect in the allegation of fact, as the jury commissioners were sworn before they selected the names and placed them in the wheel, as appeared in the evidence produced on the motion to quash the indictment.

The evidence at the trial disclosed the following facts : John P. Jones, who was a boss at a mine near Lansford, in Carbon county, was murdered on the 3d of September 1875 by two unknown men. It subsequently appeared that these two men were Edward Kelly and Michael J. Doyle, and that they had come by special arrangement with, and at the instance of, the defendant Campbell, for the express purpose of committing this murder. They were harbored in Campbell's house, and went from there at different times in quest of Jones. Campbell also supplied them both with pistols and counselled with them as to the manner and time for the commission of the crime and the direction they should take to escape.

The Commonwealth called as witnesses, James Kerrigan, who was an accomplice in the crime and who escorted Kelly and Doyle from Tamaqua to Campbell's, and accompanied them in their search for Jones, but who was not present at the killing, and James McParlan, a detective, who was sent to the coal regions for the purpose of investigating the character of the organization of the order called " Molly Maguires," to secure the apprehension and conviction of some of its members, and who joined it with that intent. The purpose of the evidence given by these witnesses was to show the motive for the crime, and the direct connection of the " Molly Maguire" organization in procuring the men, through Campbell, to murder Jones.

The evidence, in substance, was that there is an organization called " Molly Maguires," in Schuylkill, Carbon and Luzerne counties ; that it is subdivided into what are called divisions ; at the head of each division is a body-master ; that Alexander Campbell was at the head of one of these divisions at the time of the

murder of Yost and of John P. Jones; that according to the rules and practices of the society, whenever it was desired to murder a particular person the body-master of one division calls on the body-master of another division for men to commit the murder; that he usually selects men who are strangers to the man that is to be murdered, and to the place where the murder is to be committed; that there was a division at Mt. Laffee and at Tamaqua; that Campbell, as body-master at Storm Hill or Lansford, in order to carry out the bargain to kill Jones as a return for the murder of Yost drew on the Mt. Laffee division for two men. The two men furnished by the Mt. Laffee division were Kelly and Doyle; that there was also another division at Shenandoah, and that Alexander Campbell had made arrangements at one time through the Tamaqua division to have the Shenandoah division furnish the men to kill Jones; that all of these divisions acted together and are represented by counties; that these counties are represented in the state; that the state is represented in Ireland, Scotland and England by a board called the Board of Erin; that as applied to Luzerne, Schuylkill and Carbon counties, they are organized bands for the commission of crime, acting together and in concert, and that they so understand it by the rules of the organization.

The defendant submitted the following point: That if James McParlan, while acting as a detective, incited, encouraged or counselled others to commit crimes, he was an accessory before the fact in the commission of those crimes, even although he may have notified others that the crimes were about to be committed.

The court answered as follows:—

"This would be so, if he so incited, encouraged or counselled others, with a felonious intent, that is, if he intended that the crimes should be committed; but on the other hand, if he intended and continued in that intention, from the time he came to the coal regions as a detective, to ferret out and make known the crimes and secret frauds of such others, in order to their arrest and punishment, then he is not to be regarded as an accessory before the fact."

And in their general charge said: "James McParlan has been acting in the capacity of a detective. He stands in a different light from Kerrigan. Where criminals band themselves together under an organization, for the purpose of committing crime, it is justifiable in the government and society to employ detectives to get into their organization for the purpose of exposing and bringing to punishment the offenders. It is alleged, on the part of the Commonwealth in this case, that there was an organization existing in the coal regions, embracing the counties of Carbon, Schuylkill and others, having for its purpose the commission of crime, and that the members were bound together by secrecy; and that in order to destroy that organization, McParlan was sent as a detective, to

[Campbell v. Commonwealth.]

get into that organization, for the purpose of exposing it. Well, if there was an organization, criminal in its character, then society would be justifiable in employing a detective to enter the order and expose it. We, therefore, say to you, that if McParlan came into the coal region as a detective, for the purpose of getting into the organization known as, or called, the ' Molly Maguires,' and if he actually did join it, and gave information to the persons who employed him, and to the officers of the law, as to crimes committed, or that were about to be committed, and he continued there honestly, in that capacity, for the purpose of ferreting out and exposing and bringing to punishment criminals, he was not an accessory before the fact to those crimes, nor was he a co-conspirator in the eye of the law, so long as he honestly carried out the original purpose for which he entered there, and although he may have encouraged and counselled parties who were about to commit crime, if, in that, his intention was that they should be discovered, arrested and punished for such offences. Therefore, if you find that McParlan came here for that purpose, and that in good faith he was such detective, continuing to remain such while he kept with the organization, then he does not stand in the light of an infamous witness, and, therefore, his testimony is to be treated just as you treat the testimony of every other witness who comes to the stand—that is to say, give to it such weight and consideration in your deliberations as you believe it is entitled to in the particular case."

In their general charge, the court also said:—

" The moral and legal guilt of an accessory before the fact is the same as that of the principal offender. In the eye of God and in the eye of man, he who procures, counsels or commands another to commit a crime is just as guilty as the person who strikes the deadly blow or commits the crime, of whatever character it may be; and now, under our statute, all accessories before the fact to any felony are to be indicted, tried, convicted, punished, the same as if they were the principal felons; and for that reason this present indictment is drawn against Alexander Campbell, Carroll and McGehan, as if they had actually fired the pistol that killed John P. Jones. The law of this state to-day directs that the indictment shall be drawn in this form, and therefore the indictment is good, and Alexander Campbell, if the evidence satisfies you that he counselled, procured or commanded Doyle and Kelly to kill John P. Jones, may be convicted under this indictment.

" The allegation or charge, on the part of the Commonwealth, is that Campbell, Carroll and McGehan procured, counselled or commanded Michael Doyle and Edward Kelly to kill John P. Jones, and we have already said to you that if the evidence satisfies your minds beyond a reasonable doubt that Alexander Campbell alone, or together with Carroll and McGehan, or either of them, did thus

[Campbell *v.* Commonwealth.]

procure, counsel or command Doyle and Kelly, or either of them, to kill Jones, and Doyle and Kelly, in pursuance of that procurement, counselling or command on the part of Campbell, actually did kill John P. Jones, then Alexander Campbell is equally guilty with Doyle and Kelly, or either of them, if but one struck the fatal blow. Your inquiry, therefore, will be directed to the question of the killing of Jones, and whether Doyle and Kelly, or either of them, killed him by the procurement, counsel or command of Campbell."

The jury rendered a verdict of murder in the first degree, and the prisoners were sentenced to be hung.

Campbell took this writ, and alleged that the court erred,

1. In not quashing the array of grand and petit jurors.

2. In not quashing the indictment.

3. In permitting the Commonwealth to give evidence as to the purposes, practices and objects of a society called "The Ancient Order of Hibernians," or "Molly Maguires."

4. In instructing the jury that if they believed that James McParlan was acting as a detective, he was not an accessory before the fact to the commission of crime, although he counselled and encouraged the commission of crime, if he intended to have its perpetrators arrested and punished.

5. In instructing the jury that the defendant could be convicted under the bill of indictment and the evidence in the case.

*Edward J. Fox* and *Daniel Kalbfus*, for plaintiff in error.—By the Acts of 14th of April 1834, Purd. Dig. 830, and of the 10th of April 1867, Purd. Dig. 829, certain duties are prescribed for jury commissioners, among others, that they shall take an oath before selecting and drawing jurors. The object of the acts was to secure fair and impartial men as jurors, and in the inflamed condition of the public mind in the community where this trial was held the action of the jury commissioners here complained of was a flagrant violation of these laws.

The Commonwealth did not offer to prove that the defendant in this case had conspired with others to commit crimes, nor that the purposes and objects of the society known as the "Molly Maguires" were known to Alexander Campbell. McParlan's testimony was that, although the organization called the "Ancient Order of Hibernians" had several thousand members in the counties of Schuylkill, Luzerne and Carbon, yet that a comparatively small number of persons, probably less then fifty, had any knowledge that its purposes and objects were criminal in their character; and yet from that testimony the jury were permitted to infer that Campbell was knowingly connected with an organization of criminal character, without proof of the knowledge of the fact on his part.

The indictment charges that McGehan, Carroll and Campbell

murdered John P. Jones. The evidence in the trial was that Michael J. Doyle, Edward Kelly and James Kerrigan were present at the murder of Jones, who was shot by Doyle and Kelly, or one of them. Neither Campbell, Carroll nor McGehan were present at the murder, and the allegation of the Commonwealth was that Campbell procured and incited Doyle, Kelly and Kerrigan to shoot Jones, and that he was, therefore, an accessory before the fact to the murder.

The constitution of Pennsylvania provides, in section 9, article 1, that in all criminal prosecutions the accused "hath a right to demand the nature and cause of the accusation against him." It cannot be said that this indictment disclosed the nature and cause of the accusation against him. It may, perhaps, be truly said that it revealed the nature of the accusation against him, in so far that it charged him with the murder of John P. Jones, but it certainly did not disclose to him the *cause* of the accusation against him. The cause of the accusation was as alleged by the Commonwealth that he procured and incited Doyle, Kelly and Kerrigan to commit the crime; but in what manner does the indictment notify Campbell that he is to meet such a charge?

The principal witness against the defendant was James Kerrigan, one of the principals in the murder. To corroborate him chiefly, James McParlan was called. He was one of Pinkerton's detectives, and was employed to obtain information as to the crimes of the Molly Maguires, and for that purpose he became a member of the order, and remained in the coal region for a long time. He testified that while thus engaged, he was not only cognizant of crimes about to be committed, but that he actually encouraged Molly Maguires to commit crimes, expecting to be able to frustrate their intentions and to bring them to justice. He was even cognizant of the fact that Jones was about to be murdered, and that men had been selected and sent to murder him. He also testified that he thought the measures he had adopted would prevent the accomplishment of their murderous designs; but the court in substance said to the jury, that if they believed he was acting as a detective, he was not an accessory before the fact to the commission of a crime, even though he counselled and encouraged its commission.

Here is a man in the company of men who have criminal designs. They have every reason to believe him to be one of themselves, and that he is ready to aid and abet them in their murderous designs. He counsels and encourages them to commit an act of murder, intending, *in his own mind*, to frustrate their designs. Without this encouragement, it is safe to assume, they would not have attempted the murder. His plans to secure their victim's safety fail, and he is murdered. Why is not the detective an accessory before the fact? His mental intentions may have been good enough, but his acts and declarations

3 Norris—13

to the conspirators were the immediate cause which produced the death of the object of their hate.

*E. R. Siewers,* District Attorney, *Allen Craig, Charles Albright* and *F. W. Hughes,* for the Commonwealth.—The evidence shows that the jurors were selected from among the qualified electors of the county, that they *were* selected *alternately,* and that before their names were written on slips of paper or put into the wheel, the jury commissioners and the sheriff were sworn " according to law," before the prothonotary, who certifies to this fact. The cases of Chase *v.* The Commonwealth, 2 Weekly Notes 17, and Rolland and Johnson *v.* The Commonwealth, 1 Norris 306, abundantly sustain the ruling of the court below.

It was important, after showing Campbell's connection with the society of the " Molly Maguires," and his knowledge of its purposes and practices, to show what they were, through and by which the murder of Jones was secured. Nothing but Campbell's knowledge of these practices and purposes could have enabled him to procure two young men, entire strangers to Jones and without a grudge to him, to kill him in cold blood. It was through the power of this organization that men were selected belonging to it, who had never seen Jones, and yet could be induced without any reward or hope of gain to slay an innocent man, simply to gratify the revenge of a fellow member.

A detective who enters into communication with criminals, without any felonious intent, but for the purpose of discovering and making known their secret designs and crimes, and acts throughout with this original purpose, is not to be regarded as an accomplice ; the question whether he was, is one of fact for the jury : State *v.* McKean, 36 Iowa 343 ; also 1 Greenl. on Evid., sect. 382.

Campbell could be in no doubt as to the nature and cause of the accusation against him: Cathcart *v.* Commonwealth, 1 Wright 109 ; Commonwealth *v.* Twitchell, 1 Brewster 610 ; sect. 20, Criminal Procedure Act, Purd. Dig. 380, pl. 21 ; Bishop on Criminal Procedure, vol. 2, sect. 4 ; Wharton's Criminal Law, vol. 1, sect. 742 ; Commonwealth *v.* Keenan, 17 P. F. Smith 203 ; Young *v.* Commonwealth, 8 Bush (Ky.) 366 ; Commonwealth *v.* Ramsey, 1 Brewster 422.

Mr. Justice STERRETT delivered the opinion of the court, May 7th 1877.

The plaintiff in error was jointly indicted with McGehan and Carroll in the short form, authorized by the Criminal Procedure Act, for the murder of John P. Jones, and when called for trial he moved to quash the array, for the reasons, 1. " That it does not appear from the record that the jurors were selected by persons having authority to do so ;" 2. " That the persons who selected the names

[Campbell *v.* Commonwealth.]

which were put in the wheel from which the jury were to be drawn, made such selections without having been sworn according to law." These allegations were traversed by the Commonwealth, and the onus of sustaining them, as to matters of fact, was on the prisoner. It was agreed that the testimony taken on a similar motion, in the case of the Commonwealth *v.* Michael Doyle, should be considered and treated as evidence in this case, so far as the same was competent and relevant. With this and other evidence before them, including the order of the Court of Common Pleas for the selection of persons to serve as jurors, the official oaths of the sheriff and jury commissioners, the venire, &c., the court overruled the motion; and in this it is alleged there was error.

It appears from the official oath filed in the prothonotary's office on the 17th day of November 1875, that they were duly sworn on that day, but it is contended that the oath was not taken until after they had commenced to select the persons whose names were to be placed in the wheel. The commissioners' clerk testified that they met on the 16th, but no jurors were selected on that day; that after preparing the official oath and other papers they adjourned until the following day; when they met between eight and eleven o'clock, he thinks, and proceeded with the business. The testimony of Sheriff Breneiser was offered for the purpose of showing that the official oath was not administered until the afternoon of the 17th, but his recollection as to the time was somewhat indistinct and uncertain. The jury commissioners, doubtless, could have given definite and satisfactory testimony as to whether they were sworn before or after they actually selected some of the names, but they were not called. It appeared, however, that they commenced making the tickets or ballots and placing them in a tin box, used for the purpose, on the 19th or 20th; and this may be fairly regarded as the final passing upon or selection of the names. After this was completed on the 20th, the names were taken from the box and placed in the jury wheel in presence of the sheriff.

The court, in passing upon the evidence before them, came to the conclusion that the allegations of fact in support of the motion were not sustained; and found that "the jury commissioners were sworn before they selected the names and placed them in the wheel." The learned judge, after referring to the testimony of the sheriff and the clerk to the jury commissioners, says, "Taking all that the sheriff says and all that Dinkey says as to the time of commencing work and the manner of selecting the names, we are satisfied that no actual selection of names was made until the oath was administered and subscribed, and that all that was done by the commissioners before the oath was administered and subscribed was but preliminary to selecting and placing the names in the wheel."

With all the evidence, documentary and oral, before the court, the fact was found as here stated; and the testimony being addressed

[Campbell *v.* Commonwealth.]

to the court, their finding as to matters of fact should not be disturbed, unless it appears to be manifestly wrong. An examination of the testimony, returned with the record, fails to satisfy us that there was any error in the finding of the court, or in denying the motion to quash the array.

The refusal of the court to quash the indictment is also assigned for error. The reasons in support of the motion are, 1. " That it does not set forth the manner of the death of John P. Jones, or the means by which the killing was accomplished." 2. " That the names which were put into the wheel from which the grand jury was drawn, which found the present indictment against the prisoner, were selected by the jury commissioners before they were sworn." The first reason is not sustained, but it may be considered in connection with the fifth assignment of error. The last reason corresponds with the second in support of the motion to quash the array and requires no further notice.

The third assignment of error is in permitting the Commonwealth to give evidence of the purposes, practices and objects of a society called the " Ancient Order of Hibernians," or " Molly Maguires." A careful examination of the testimony fully satisfies us that the evidence complained of was necessary and proper to give the jury a full and fair understanding of the circumstances attending the murder of Jones, as claimed by the Commonwealth. The theory of the prosecution was that the deceased had become obnoxious to members of the division or association of which the prisoner was an active member, and that it was arranged by him and others that he should be killed ; but it was considered unsafe for the offended parties or any of the men about the mines, of which Jones was superintendent, to undertake the work, for the reason that such a course would be more likely to lead to detection ; and it was therefore arranged that men for the purpose should be procured, through the instrumentality of the " Molly Maguire" organization, from some division of the society whose members were unknown to Jones ; that, according to the regulations and practices of the order, such a mode of procedure was not unusual or extraordinary ; that such services were rendered " on a trade," as it was termed, by members of one division to those of another in return for similar services ; that in this way, through these instrumentalities, the defendant and others procured Doyle, Kelly and Kerrigan to enter upon the work of killing Jones, in the prosecution of which they were counselled and encouraged by him and those with whom he was jointly indicted.

Such, in substance, was the theory of the Commonwealth ; and the learned judge instructed the jury that if the evidence satisfied them " beyond a reasonable doubt that Alexander Campbell alone, or together with Carroll and McGehan, or either of them, did thus procure Doyle and Kelly, or either of them, to kill Jones, and

[Campbell v. Commonwealth.]

Doyle and Kelly, in pursuance of that procurement, counselling or command on the part of Campbell, actually did kill Jones, then Campbell is equally guilty with Doyle and Kelly, or either of them, if but one struck the fatal blow." In considering the questions thus submitted to them, and especially whether the killing was by procurement of Campbell, it was very important that the jury should be fully informed of all the circumstances that would tend to explain his connection with the transaction, and the motives by which the parties to it were actuated. Without this it would have been difficult, if not impossible, for them to understand how Campbell was able to procure the assassination of Jones by young men who were entire strangers to him, and to whom personally he had never given any cause of offence; what motive he had in doing so, and the reasons which influenced them in consenting to waylay and kill one who, so far as they were personally concerned, was an unoffending stranger. The evidence complained of tended to shed a flood of light on these and other matters, which without it would have been dark and almost impenetrable. The circumstances of the case were indeed peculiar and extraordinary, and without proper explanatory testimony could not have been fully and fairly comprehended by the jury. As a general rule, every transaction can be best understood when viewed in the light of all the surrounding circumstances; and this was especially true in this case. It was for these purposes that the evidence was admitted, and very properly so, we think. If the labyrinths of crime are not explored justice will be often defrauded.

It is claimed in the fourth assignment that the court erred in instructing the jury that if they believed that James McParlan was acting as a detective, he was not an accessory before the fact, although he counselled and encouraged the commission of the crime, if he intended to have its perpetrators arrested and punished. In the general charge, the court, after referring to the theory of the Commonwealth, as to the existence of a secret organization for the purpose of committing crime, and the right of the government in such cases to protect itself by employing detectives to enter the organization, expose its criminal acts and bring the guilty to punishment, instructed the jury that if McParlan was employed as a detective, and joined the order "for the purpose of ferreting out and exposing and bringing criminals to punishment, he was not an accessory or co-conspirator in the eye of the law," so long as he honestly carried out the original purpose for which he entered the organization, and, although he may have encouraged and counselled parties who were about to commit crime, if, in so doing, his intention was that they should be discovered, arrested and punished.

The instruction thus given on this subject, and more fully explained in answer to several of the points submitted, is sustained by reason

as well as authority.    In The State *v.* McKean, 36 Iowa 343, it
was held that a detective who enters into communication with crim-
inals, without any felonious intent, but for the purpose of discovering
and making known their secret designs and crimes, and acts through-
out with this original purpose, is not to be regarded as an accom-
plice ; and that the question is one of fact for the jury.    To the
same effect is 1 Greenleaf on Ev., sect. 382, in which it is stated
that the rule as to accomplices does not apply to those who, under
the direction of the public authorities, continue " to act with their
guilty confederates until the matter can be so far advanced and
matured as to insure their conviction and punishment ;" and though
a great degree of objection or disfavor may attach to such, they are
not to be regarded as accomplices.

In view of the testimony before the jury, it was properly left to
them to say whether or not McParlan acted throughout in good
faith as a detective, with an eye single to the discovery and punish-
ment of organized crime, and without any intention on his part
of becoming, in any way, a party to the commission of crime.    The
instructions on this subject were so full, clear and carefully guarded
that the jury could not fail to understand them ; and we discover
in them no just ground of complaint. .

The fifth and last assignment of error is, " instructing the jury
that the defendant could be convicted under the indictment and
evidence in the case."    It is claimed, that while the indictment
charges   Campbell,   McGehan   and   Carroll   with   the   murder,
the evidence shows that Doyle, Kelly and Kerrigan were present
and concerned in its commission ; that Jones was shot by Doyle
and Kelly, or one of them, and that neither of the three in-
dicted were present, and therefore they were at most only
accessories before the fact to the murder, and should have been
so indicted ; that by charging them as principals, the indictment
furnished the defendant with no information whatever as to the
nature and cause of the accusation against him ; and it is
thus claimed that the evidence did not sustain the indictment
and that the court should have so instructed the jury.    This
position is not tenable under the Criminal Procedure Act, the
44th section of which provides, " If any person shall become an
accessory before the fact to any felony * * * such person may
be indicted, tried and convicted and punished in all respects as if
he were a principal felon."    As to the *form* of the indictment, the
20th section provides that, " in any indictment for murder or man-
slaughter it shall not be necessary to set forth the manner in which
or the means by which the death of the deceased was caused, but it
shall be sufficient in every indictment for murder to charge that the
defendant did feloniously, wilfully and of his malice aforethought
kill and murder the deceased."

Under these sections and the facts of the case, the indictment, in

its present form, was fully authorized, and the court committed no error in saying that, under it and the evidence, the defendant might be convicted if they found that he procured the murder of the deceased. The very language of the section, than which nothing can be plainer or more explicit, is, that the accessory may be indicted, tried and convicted and punished, in all respects, as if he were a principal felon.

The question of the sufficiency of the indictment, in the short form authorized by the code, was before this court in Cathcart *v.* Commonwealth, 1 Wright 108, and it was held to be good, and not in conflict with the constitutional guaranty that in all criminal prosecutions the accused shall have a right to be informed of the "nature and cause of the accusation against him." Mr. Justice STRONG, in delivering the opinion of the court, says that "an indictment must exhibit the nature and cause of the accusation, that it must set out the crime laid to the charge of the accused; but the mode in which the crime was committed, the instrument with which the murder was effected, whether it was held in the right hand or the left, whether the wound was inflicted on the head or the body, are entirely apart from the nature and cause of the accusation." So it may be said of an indictment in which one, who in point of fact was strictly an accessory before the fact, is charged as a principal. It is not necessary to state the means or agency by which he accomplished the murder, whether it was done by his own hand or the hand of another employed by him for the purpose. It is sufficient if the charge be stated with such certainty that he may know what he is called upon to answer. The defendant in this case could not fail to know that the crime with which he was charged was the murder of John P. Jones; and whether he was present and actively participated in the commission of it, or was only present, encouraging and sustaining those who did commit it, or whether, being absent himself, he procured others to do the deed, he must have known that, in either case, he was amenable to the charge. If he had been an accessory at the fact, he would have been properly indicted as principal without the aid of the code, and the technical distinction between an accessory before the fact and an accessory at the fact, can make no difference, since the code now authorizes the former to be indicted, tried and punished as a principal.

In some of our sister states statutes in some respects similar to our own are in force. That of Illinois provides that an accessory before the fact shall be deemed and considered a principal and punished accordingly. In Baxter *v.* The People, 2 Gilman 578, an accessory before the fact was charged in the indictment as a principal, and it was objected in his behalf that there was a variance between the proof and the allegations. The court remarked that

[Campbell *v.* Commonwealth.]

this was true in one sense, just as it would be in an indictment for murder against an accessory at the fact; but it was held that the indictment was in proper form under the statute. In California, also, under the statute making an accessory before the fact a principal and providing that he may be punished accordingly, it was held that he should be indicted as though he had personally committed the offence: The People *v.* Davidson, 5 Cal. 134.

An examination of the whole case satisfies us that a fair and impartial trial was accorded to the prisoner; the case was submitted by the learned judge in a very clear and able charge and upon evidence which fully justified the jury in rendering a verdict of guilty, and nothing has been shown that would justify us in disturbing the judgment.

The judgment of the Court of Oyer and Terminer is affirmed, and it is ordered that the record be remitted for the pupose of carrying the sentence into execution.