# Commonwealth *v.* Brown, Appellant.

*Criminal Law—Pandering—Act of June 7, 1911, P. L. 698.*

A conviction of the offense of pandering under the Act of June 7, 1911, P. L. 698, will be sustained where the evidence shows that men went to the house where defendant had resided for several years, that although he kept no women in the house he had a book containing the addresses of many women, that he would send out for them, assign rooms to the men with the women he brought in, and share with the women the moneys which they received from the men.

Argued May 12, 1913. Appeal, No. 96, Oct. T., 1913, by defendant, from judgment of Q. S. Phila. Co., Nov. Term, 1912, No. 22, on verdict of guilty in case of Commonwealth v. Alexander Brown. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Indictment for pandering. Before ORMEROD, J.

The indictment was under the Act of June 7, 1911, P. L. 698, which is in part as follows:

"Any person who shall induce, persuade, encourage, inveigle or entice a female person to become a prostitute, or who, by promises, threats, violence or by any device or scheme shall cause, induce, persuade, encourage, take, place, harbor, inveigle or entice a female person to become an inmate of a house of prostitution or assignation, or any place where prostitution is practiced, encouraged or allowed, . . . . shall be guilty of pandering."

The court charged in part as follows:

The evidence in this case rests entirely upon the testimony of the three witnesses, Pym, Blasser and Kneeland.

Mr. Pym testified that he and others went to the home of the defendant on October 1, 1912—that they went into the house, went into the reception room, and that they did not ask for any girls, but the defendant said

that he had none there, but would send out and get some girls—that he then went to a drawer and got out a book and told Pym and the others that were with him that he had the addresses of a number of girls and that he could get them girls of different ages. This witness also said that the defendant did telephone to one or two numbers, and that after telephoning he said that he could not get them, but that later on he sent out and brought in, or had brought in two girls, Mabel and Bessie Mills. Mr. Pym testified that they remained there some time and that the defendant said to him that if they would come again he would have a number of girls there from whom they could select what they wanted—that on the next evening, October 2, they did go there again, and on arriving there found six girls sitting in the room—that after considerable conversation with them he went upstairs with Mabel Mills, and that afterwards one of the other men came up with another of the girls, and that the other men came up, including the defendant, and that while they were there he asked what the price was and Mabel Mills said the price would be $2.00, and that he handed her $5.00, and that another of the men, Mr. Grah, I think it was, handed $3.00 to the other girl, and that a portion of the money given to each of the girls was handed over in their presence to Mr. Brown.

The testimony of Mr. Blasser substantially corroborates Mr. Pym, and in addition to that he testified that the defendant in this case gave him a detailed account of the manner in which he procured girls to come to his place. It will not be necessary for me to repeat that testimony—you will remember it and it is your function and duty to remember what the testimony was. You will also remember the testimony of Mr. Blasser in regard to what the defendant said to him about the seduction of one girl of seventeen years of age. As has been said to you by the district attorney, that act is not what he is charged with in this indictment,

and what was said in regard to that is not to be considered by you as constituting an offense, but it may be considered by you in connection with the other testimony in the case, as bearing upon the question whether or not the defendant was procuring girls for the purpose of prostitution.

You would have to be satisfied from the evidence in this case, that this was a house of prostitution, in order to convict the defendant.   I would say to you that if this house was used for the purpose of prostitution—if women came there with the knowledge and consent of the defendant for the purpose of prostitution—then it was a house of prostitution within the provisions of this act.   It would not be necessary that every person who committed prostitution there should be an inmate of the house, a permanent inmate of the house, but if it was kept and used for purposes of prostitution, it was a house of prostitution within the provisions of the act.   The question is, was it used for that purpose, and did the defendant in this case entice, inveigle or persuade girls to come there for that purpose?   If he did, then he should be convicted under the provisions of this act of assembly.   The evidence in this case, gentlemen, has not been very voluminous, and depends upon the testimony of Pym and Blasser to whom I have already referred, and the testimony of Mr. Kneeland.

The testimony of Mr. Kneeland was that at a time prior to this he, in company with another man, went to the defendant's house, and that the defendant at that time agreed to get him girls, without saying what the purpose was.   There is no direct evidence that these girls committed or were to commit the act of prostitution, and you are to say from the testimony in this case whether the testimony of the commonwealth's witnesses is to be believed and whether these girls came there for the purpose of prostitution.   You are to determine what was the purpose of bringing the girls there—was it for common, decent, social intercourse, or

was it for the purpose of prostitution? While there is no direct evidence that they came to the house for the purpose of prostitution, you can take into consideration the circumstances under which they did come there, if you believe they did come to the defendant's house and were in the habit of coming there, and whether they did come there through the directions or through the enticing or persuading of the defendant in this case for the purpose of prostitution. As bearing upon that question, you have a right to take into consideration the testimony offered on the part of the commonwealth as to the payment of money.

[I have been asked by counsel for defendant to charge you upon certain points, which I will now proceed to do:

First. "If you believe Grah, Pym, Dunn, Kneeland and Blasser by promising to perpetrate a crime lured Brown, an innocent party, into aiding and abetting the crime, their object being not the perpetration of the crime but the luring of Brown into committing the crime, their evidence should be disregarded, and your verdict should be 'Not Guilty.'"

I affirm that point as it is written, but would say to you that what I desire to have you understand in affirming this point is that if this was the only offense that has been proven by the commonwealth against the defendant in this case, and that these men induced him at that time or at a time stated to do a thing which he would not have done except for their inducement—that he was an innocent man and that they laid a trap for him for the purpose of convicting him, and that all that was done and all of the evidence procured by the commonwealth simply applied to the incident that occurred at that time, the defendant ought not to be convicted. The law will not permit traps to be laid for innocent men, and then have them convicted. You may take into consideration all of the evidence in this case and from a fair consideration of all the evidence as to what occurred there at that time—the presence of the

girls—the statements of the defendant, and the production of this book, you must find whether or not the defendant was engaged in the business of pandering, taking into consideration what occurred there at that time as part of the evidence of the commonwealth, and as bearing upon this question of whether he is guilty or not of the offense charged in this indictment.] [2]

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* among others were (1) refusal of binding instructions for defendant, and (2) above answer to point, quoting it.

*Charles Edwin Fox,* assistant district attorney, with him *Samuel P. Rotan,* district attorney, for appellee.

PER CURIAM, July 16, 1913:

After a careful examination and consideration of the record and the evidence in this case in the light of the assignments of error, and with the aid of the arguments of the able counsel for the defendant and the commonwealth, we all are of opinion that the indictment accurately charged the offense prescribed against by sec. 1 of the Act of June 7, 1911, P. L. 698, and that the evidence was amply sufficient to warrant the jury in finding every fact essential to the defendant's lawful conviction of the offense charged. Indeed, it is impossible to see how they could have had any reasonable doubt of his guilt of that specific crime, if they believed the evidence. The question was for the jury; it was submitted to them in an adequate and impartial charge, and we see no valid ground, technical or otherwise, for disturbing their verdict. As to the second assignment of error, it seems sufficient to say that the defendant, at least, has no just cause of complaint because the affirmance of his point was accompanied by the qualifying and explanatory remarks embraced in this assignment. The learned trial judge's statement of the

law applicable to the subject was quite as favorable to the defendant as he had a right to ask. See Campbell v. Com., 84 Pa. 187; Com. v. Wasson, 42 Pa. Superior Ct. 38.

All the assignments of error are overruled and the judgment is affirmed.