## Commonwealth v. Ryan et al.

*James J. Logan,* for Commonwealth.

*Herbert B. Cohen* and *Luria & Still,* for defendants.

NILES, P. J., February 10, 1936.—As one of the safeguards for the public funds distributed in the administration of the State Emergency Relief Board the legislature passed the Act of May 3, 1933, P. L. 250. Section 2 provides:

"It shall be unlawful for any person, whether acting for himself or for another, or for any firm or corporation, directly or indirectly, to furnish or deliver to any person money, merchandise, or anything other than food on or in exchange for a food order."

At the instance of Julius H. Tolson, field examiner, State Emergency Relief Board, 46 North Cameron Street, Harrisburg, Pa., summary proceedings, as authorized by section 5, were instituted on October 11, 1935, before Alderman Walter F. Owen, of the first ward of the City of York, against Dorothy Ryan and Elmer Hiney; and,

in due process, after hearing testimony, on October 15, 1935, the defendants were adjudged guilty and sentenced to pay a fine of $25 each and the costs of prosecution.

On October 23, 1935, upon petition, the defendants were allowed an appeal by this court. The case came to open court on January 16, 1936. It was shown without contradiction that the defendants at the time of the transaction complained of were employes of the Giant Quality Food Price Cutter, Inc., operating a store known as Giant No. 3, in the City of York.

The Commonwealth emergency relief board in York, under the jurisdiction of the State authorities in Harrisburg, had received information regarding alleged violations of the act at the Giant store on September 6, 1935, in case no. 13041, and Fred N. Gartside, chief controller, signed in the usual form a food relief order directed "To any vendor of food in Pennsylvania", for $3, authorizing the furnishing of commodities as specified on the back of the order to Gordon Fisher. This order was given to Clarence Billet, assistant controller in the office at York, and by him to Gordon Fisher, an investigator connected with the York office. Gordon Fisher was not a person entitled to relief. The order was given in the course of investigation to ascertain whether there was any basis for the complaint against the Giant store.

In the afternoon of that day, September 6, 1935, Billet and Fisher went to the Giant store together, without revealing to anyone in the store, so far as the evidence goes, their purpose or association. The testimony of Clarence Billet and Gordon Fisher was to the effect that in accordance with the routine of the store Fisher went from place to place and purchased $1.52 worth of groceries, which were taken to an employe called a checker, who examined the goods and made out a list, which was given to Fisher; the groceries having been put into a paper bag, he took them to a cashier, Dorothy Ryan, one of the defendants.

He gave her the checker's slip showing that the groceries were of the value of $1.52, and handed to her in pay-

ment the $3 food relief order. He was entitled to $1.48 change. He asked Miss Ryan to give him for the $1.48 a carton of Camel cigarettes. Fisher testified Miss Ryan hesitated and called another employe of the Giant store, Elmer Hiney, the other defendant, who came to the cashier's booth. She asked him about giving Fisher the carton of cigarettes, and he in turn said to her: "You know what your orders are." After they had talked a little bit Hiney said to Fisher: "Why not take just a few packs now and come back and get the rest later; because if the State would find it out we were giving cigarettes they would take our license from us."

To this Fisher agreed and asked: "How about four packs?" The two defendants said: "That is O. K." and gave him four packs of the value of 58 cents, which, added to his groceries, amounted to $2.10; and Miss Ryan gave Fisher a credit slip for 90 cents. Fisher took the bag of groceries, the four packs of cigarettes, and credit slip for 90 cents, which he says he had procured from the defendants, and turned them over to Mr. Billet, who was waiting for him on the outside of the store. Fisher testified that subsequently, on October 1, 1935, Billet gave him the 90-cent credit slip, which on that day he took to the Giant store to make a purchase of cigarettes, and after some hesitation and consultation with some other employe, Miss Ryan gave him in exchange for the 90-cent credit slip six packs of Lucky Strike cigarettes of the value of 58 cents and three boxes of matches of the value of 2 cents.

Cigarettes are not articles authorized to be furnished on food orders.

In defense to this testimony both the defendants denied all knowledge of the incidents testified to by Fisher and Billet as occurring on September 6th. Their testimony is to the effect that if on October 1st six packs of cigarettes were given to Fisher in satisfaction of the 90-cent credit slip, they did not know and had no means of knowing that the 90-cent credit slip had been issued on account of any food order. They testified that the regulations of the store,

frequently communicated to them and to other clerks, forbade the furnishing of cigarettes upon such a food order. In regard to this store regulation Philip Blum, the manager, corroborates them. The issue is one of fact to be determined by the court on this appeal according to the usual rules of evidence. If the two Commonwealth witnesses are to be believed, the defendants acted illegally and in violation of the act under which this proceeding is instituted. If the defendants are given credence they are not guilty. This being a penal statute, the defendants are entitled to the benefit of the presumption of innocence, unless the trial tribunal is satisfied from the evidence beyond all reasonable doubt that they are guilty as charged.

Defendants' counsel earnestly pressed the proposition that these public officers, whose duty it is to protect the relief funds raised by taxation, are to be discredited. It is said that if the food order was not issued to anyone entitled to relief the whole conduct of Chief Controller Gartside, Assistant Controller Billet, and Investigator Fisher constituted a trap into which the defendants fell; and that the board's agents put themselves in the position of being tempters and procurers to bring about a violation of the act of assembly by the defendants.

Where a question of fact is to be decided by a tribunal, either a jury or, as in this case, a judge, one of the elements to be considered regarding the weight to be given the testimony of witnesses is their interest in the event. In this case a thought expressed by defendants' counsel is that the officials of the relief board acted as accomplices with these two defendants, inducing them to sell the cigarettes upon the food order in violation of the law, and that by so doing they put themselves in the position of accomplices. It is suggested that the rules regarding accomplices should, in such case, apply.

The rule on this subject is generally accepted as stated in a leading Pennsylvania case: Campbell v. Commonwealth, 84 Pa. 187. In that case a detective joined a crimi-

nal organization, the Molly McGuires, and for some time participated in their meetings and criminal conspiracies, which led up to a murder. It was properly left to the jury to say whether the detective acted in good faith as a detective, with an eye single to the discovery and punishment of organized crime, and without any intention on his part of becoming in any way a party to the commission of the crime. If the jury concluded from the evidence that to be held an accomplice his criminal intent must complice subject to be discredited unless corroborated by other persuasive evidence. This is followed by Commonwealth v. Hollister, 157 Pa. 13, in which it was ruled that to be held as an accomplice his criminal intent must be shown. These principles are followed in the textbooks and in other States. It is held that a decoy or feigned accomplice is not an accomplice within the meaning of the rule requiring corroboration of an accomplice in order to support a conviction. A decoy does not have the same motive to testify against the defendant as an accomplice, whose interest is to excuse himself at the expense of his companions in crime. He is not to be treated as an infamous witness. A spotter or paid informer who buys a lottery ticket or prohibited liquor for the purpose of detecting and punishing the illegal seller is not to be considered as an accomplice. Of course such evidence should be subject to careful scrutiny.

Defendants' counsel raises another objection, which is worthy of consideration. The act makes it unlawful to furnish anything but food upon a food order. It is suggested that the food order referred to must be a genuine one; that Mr. Fisher, the investigator, was not in the proper class entitled to a food order; and that therefore the furnishing of cigarettes instead of food on such an order technically is not within the prohibitions of the act. We are not convinced that this objection is valid. If, as was testified to by the Commonwealth's witnesses, the order presented to the defendants entitled the store to $3 out of the relief fund, the furnishing of cigarettes

thereon in violation of the law and the specific terms of the order was illegal.

We are led to conclude that there is nothing in the evidence or the suspicions suggested to discredit the Commonwealth's witnesses. It is purely a baseless supposition that these useful and necessary public officers were actuated by the desire to entrap innocent people or were impelled by some other motive than a proper sense of duty.

The testimony of the defendants must necessarily be affected by consideration of their interest, personally and as employes of the Giant Store.

After careful examination and consideration of the testimony and the arguments of counsel, we are forced to conclude that the two defendants did furnish on the food order cigarettes which were not itemized or authorized thereon. The testimony does not raise such reasonable doubt as to this conclusion as the applicable rules of evidence require for an acquittal under such circumstances.

The Commonwealth does not claim that the Giant Store owners were violators of the law. The uncontradicted evidence is that they were not. They gave repeated orders to all their employes, including the two defendants to comply with the law and not to furnish anything but food on such an order. The two employes, defendants, disobeyed what they knew to be the orders out of carelessness or complacency. The board properly refrained from taking any steps to penalize or discredit the Giant Stores. They have now taken additional precautions to make it impossible for their employes to err hereafter. According to the undisputed evidence the Giant Store's management complied with the law and made a sincere attempt to prevent its violation by any of their numerous employes. There is no ground for penalizing them on account of the acts of their employes in violation of the employer's specific instructions and without the knowledge, participation or consent of the employer.

And now, to wit, February 10, 1936, the defendants Dorothy Ryan and Elmer Hiney are adjudged guilty of furnishing something other than food, to wit, cigarettes, on and in exchange for a food order contrary to the Act of May 3, 1933, P. L. 250; and defendants are sentenced to pay a fine of $25 each and costs of prosecution; and pay to the Commonwealth Emergency Relief Board the face of the food order, to wit, $3.

The sentence of the alderman is affirmed.