DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

ANTHONY RIVERA,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2023-2718

_____

December 10, 2025

Appeal from the Circuit Court for Hillsborough County; Michelle Sisco, Judge.

Bryan D. Savy of Bross & Savy, PLLC, West Melbourne, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Taylor A. Schell, Assistant Attorney General, Tampa, for Appellee.

ATKINSON, Judge.

Anthony Rivera appeals an order denying his Florida Rule of Criminal Procedure 3.850 motion for postconviction relief asserting juror misconduct based on the nondisclosure of information during voir dire, which was denied by the postconviction court as untimely, and he also appeals the order denying his subsequent motion for rehearing and/or reconsideration. Because Mr. Rivera cannot meet the newly discovered evidence exception under rule 3.850(b)(1) permitting him to move for postconviction relief outside the two-year limited time frame because the

information he puts forth as newly discovered evidence could have been timely discovered with due diligence, this court affirms.

Mr. Rivera was adjudicated guilty of one count each of first-degree felony murder and robbery with a deadly weapon and sentenced to life in prison on both counts. He filed a rule 3.850 motion for postconviction relief asserting juror misconduct based on the nondisclosure of information during voir dire, alleging that a juror concealed the arrest history and criminal backgrounds of her ex-husband, sons, and boyfriend and that, based on the juror's close relationship with her family and her sons, she was likely biased against Mr. Rivera and sympathetic to the victim in his case because the victim was involved in selling drugs. Additionally, Mr. Rivera alleged that the juror withheld the fact that she lived 2.8 miles from the condominium where the crime took place after being asked whether she was familiar with the location. Mr. Rivera argued that because the concealed information was not discoverable by trial counsel through due diligence, his motion was timely under rule 3.850(b)(1) based on newly discovered evidence that could not have been ascertained by the exercise of due diligence within the two-year limited time limit. Mr. Rivera also filed an affidavit of the co-owner of Covert Ops Jury Investigations—the company that uncovered the purportedly newly discovered evidence—in order to factually support his claim for relief. *See* Fla. R. Crim. P. 3.850(c) ("For all other newly discovered evidence claims, the defendant shall attach an affidavit from any person whose testimony is necessary to factually support the defendant's claim for relief."). The postconviction court denied the motion as untimely, finding that the newly discovered evidence exception was not applicable to the facts put forth in Mr. Rivera's motion. The court noted in its order that Mr. Rivera "could have

2

initiated his investigation into the jurors for any potential misconduct shortly after the trial . . . and filed any potential claim, including the one asserted in this Rule 3.850 motion, well within the two-year time bar."

The summary denial of a rule 3.850 motion for postconviction relief is reviewed de novo. *Duncan v. State*, 232 So. 3d 450, 452 (Fla. 2d DCA 2017) (citing *Balmori v. State*, 985 So. 2d 646, 649 (Fla. 2d DCA 2008)). "On appeal from a summary denial, this court must reverse unless the post-conviction record, *see* Fla. R.App. P. 9.141(b)(2)(A), shows conclusively that the appellant is entitled to no relief." *Wadley v. State*, 100 So. 3d 265, 265 (Fla. 3d DCA 2012) (citing Fla. R. App. P. 9.141(b)(2)(D)). Rule 3.850 bars a motion to vacate a sentence filed more than two years after the judgment and sentence become final. Relevant to this appeal, rule 3.850 provides an exception to the two-year filing deadline when "the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence, and the claim is made within 2 years of the time the new facts were or could have been discovered with the exercise of due diligence." *See* Fla. R. Crim. P. 3.850(b)(1).

Mr. Rivera's convictions and sentences were per curiam affirmed by mandate on November 21, 2007; thus, any motion for postconviction relief should have been filed on or before November 21, 2009, two years after this court's mandate issued in 2007. Fla. R. Crim. P. 3.850(b). Mr. Rivera filed his motion for postconviction relief on June 29, 2022, well outside of the two-year time frame afforded by rule 3.850(b). Summary denial of a postconviction motion is proper when a defendant "fails to establish a valid exception to the time limitation." *Placide v. State*, 189 So. 3d 810, 812 (Fla. 4th DCA 2015).

In support of his argument that his postconviction motion should not be procedurally barred as untimely, Mr. Rivera cites *Martin v. State*, 322 So. 3d 25 (Fla. 2021). In *Martin*, the supreme court found that, although the defendant raised his postconviction claim outside of the time limits prescribed by rule 3.851(d)(1), the postconviction claim was raised within one year of discovering the evidence of juror misconduct and was therefore not procedurally barred. *Id.* at 34. Mr. Rivera notes that the court distinguished its holding in *Diaz v. State*, 132 So. 3d 93 (Fla. 2013), wherein the court had previously held that "a juror misconduct claim alleging concealment of information during voir dire was procedurally barred because defense counsel could have filed a motion to interview the juror shortly after the verdict and then raised the issue on direct appeal." *Martin*, 322 So. 3d at 33. As Mr. Rivera correctly observed in his motion for rehearing and/or motion for reconsideration, the court in *Martin* found that, unlike in *Diaz*, the concealed information could not have been discovered without voluntary disclosure.[1] *Id.*

_____

[1] The *Martin* opinion involved two juror misconduct claims that had been advanced by the postconviction defendant in that case—one in an amended postconviction motion and another in a third amended postconviction motion based on additional information that came to light during the postconviction proceedings. *See id.* at 32–33. The former concerned a juror's DUI conviction; the latter, which was the focus of the supreme court's review, concerned that juror's previously undisclosed juvenile adjudication and the murder of his grandfather. *See id.* at 29. Notably, there is no discussion in the *Martin* opinion about whether the concealed DUI conviction—something that would seem to be readily discoverable through public criminal records—was newly discovered evidence. Instead, the court deemed the appellant to have "abandoned . . . his claim that trial counsel was ineffective for failing to adequately question Juror Smith or to ascertain Smith's DUI conviction and file a motion for new trial." *See id.* at 32 n.5.

4

Mr. Rivera's reliance on *Martin* elides the nature of the information withheld and how it could be discovered, which led to the court's disparate rulings in *Martin* and *Diaz*. As the court noted, "in *Diaz*, the undisclosed facts were the juror's history of domestic violence charges and arrests, a restraining order issued against the juror, and the fact that the juror worked as a domestic violence counselor." *Martin*, 322 So. 3d at 33. Those facts "were all easily discoverable by trial counsel with diligence, meaning the asserted misconduct could have been raised on direct appeal." *Id.* By contrast, the nature of the information withheld in *Martin* was a grandparent's murder and a juvenile adjudication; as the court observed, "defense counsel could not have discovered [the juror's] juvenile adjudication or grandfather's murder absent voluntary disclosure from [the juror] himself or from the State." *Id.* These facts were not "easily discoverable by trial counsel with diligence" and, indeed, the State conceded that the defendant would not have discovered this information "absent voluntary disclosure from [the juror] himself or from the State." *Id.*; *cf. id.* at 31 ("In its answer to Martin's amended 3.851 motion, the State asserted that this ineffective assistance claim *should be* explored at an evidentiary hearing." (emphasis added)).

In Mr. Rivera's case, the nature of the facts withheld more closely aligns with the type of discoverable information distinguished by the court in *Martin*. The information withheld by the juror concerned her ex-husband's arrests (including arrests for robbery and cannabis possession), her sons' arrests (including arrests for multiple robberies, cannabis and cocaine possessions, and batteries), her boyfriend's history of possession in multiple marijuana cases, and her address being 2.8 miles from the condominium where the crime took place. Just as the history of domestic violence charges and arrests, a restraining order, and

5

the juror's profession as a domestic violence counselor in *Diaz* "were all easily discoverable by trial counsel with diligence, meaning the asserted misconduct could have been raised on direct appeal," so too was the information withheld by the juror in Mr. Rivera's case discoverable with diligence. *Id.* at 33.

Mr. Rivera argues that this information could not have been discovered by due diligence in the two-year time limit because the company that discovered the information—Covert Ops Jury Investigations—was retained on August 16, 2021, and completed its investigation on September 10, 2021, making the earliest possible date Mr. Rivera could have discovered the juror's nondisclosure September 10, 2021. He argues that he could not afford to retain these services until August 2021, and, moreover, that the company itself did not exist until July 16, 2020, and that it is "the only known company that specializes in post-conviction investigations of juror misconduct." This argument is not convincing. The fact that a particular commercial enterprise dedicated to such juror investigations might not have existed during the time period between when Mr. Rivera's judgment and sentence became final and the company's incorporation in 2020 says nothing about whether such information could be ascertained independently of that specific entity by means of a diligent search conducted by the defendant, postconviction counsel, or some other type of professional service providers.[2]

---

[2] Private detective agencies have existed at least since the 19th century, famously in the United States with the Pinkerton National Detective Agency. *Cf. Campbell v. Commonwealth*, 84 Pa. 187, 193 (Pa. 1877) ("James McParlan was called. He was one of Pinkerton's detectives, and was employed to obtain information as to the crimes of the Molly Maguires . . . ."); *Blake v. Blake*, 70 Ill. 618, 630 (1873) ("It is

The argument that a cottage industry of juror investigators did not develop until after the time limit expired is not enough to satisfy the requirement that the newly discovered evidence could not have been discovered with due diligence within the permissible timeframe. Indeed, that the investigative methodology employed by the juror investigators was available prior to the deadline can be intuited from the affidavit Mr. Rivera attached in support of his motion for postconviction relief. According to the affidavit, the process used by Covert Ops Jury Investigations to ascertain the withheld information regarding the criminal backgrounds of the juror's ex-husband, sons, and boyfriend involved searching for publicly available information using publicly available records. The juror's ex-husband was connected to her via the Hillsborough County Clerk of Court's online criminal case records (HOVER) where the jury investigation company found his marriage license with the juror. Likewise, the identities of her children were found in a document located via HOVER. This database led the investigators to search the Florida Department of Corrections' online site for the juror's ex-husband, revealing his prison record. Searches for the juror's sons on

urged, as a reason why the evidence of frequent intercourse with Thompson, and visits at his office, should not have weight with the jury, that the witness named Gleason was one of 'Pinkerton's detectives,' and employed for the purpose of watching appellee's movements and conduct. . . . Appellee, . . . too, employed 'detectives,' though not of 'Pinkerton's force,' to spy out the shortcomings of appellant, but proved nothing. She should not complain if her husband used the same instruments as she used, and which this court has sanctioned."). In Florida alone, there were reportedly 2,627 private investigative agencies licensed as of December 31, 2021—less than five months after Covert Ops Jury Investigations was retained by Mr. Rivera. Fla. H.R., H.B. 1509 (2009) Staff Analysis (January 27, 2022), available at https://www.flsenate.gov/Session/Bill/2022/1509/Analyses/h1509a.RRS.PDF.

HOVER led to the discovery of their "multitude of criminal cases" and prompted the investigators to perform a public records request of the Hillsborough County Sheriff's Office and the Tampa Police Department for the relevant case files, which were provided. It appears from the record that the identity of the juror's boyfriend was also revealed by reference to the juror's address and consultation of public records. In Mr. Rivera's motion for rehearing and/or reconsideration, he described that, "in nearly every one of [the juror's] sons' criminal cases, as well as many of [the juror's] ex-husband's *and long-time boyfriend's* criminal cases, the address listed on the police reports is the same address where [the juror] resided." (Emphasis added.) And in the affidavit attached to his postconviction motion, the juror investigator explained that through "[f]urther searching of" the juror's social media account, "a long-time boyfriend" was identified and, "[b]ased on these photos *and also case information of* . . . [the juror's boyfriend] . . . found on the Hillsborough HOVER site, they . . . were still together at the time of Mr. Rivera's trial." (Emphasis added.) Nothing in Mr. Rivera's filings in the trial court, including the affidavit of the juror investigation agency owner, indicates that the identity of any of the juror's loved ones' criminal records could not have been discovered by reference to public records of criminal cases with defendants who shared the juror's home address.

Mr. Rivera argued below that Covert Ops Jury Investigations "relied primarily on information from [the juror's] Facebook page to substantiate her identity," which resulted in the discovery of the juror's family and romantic partners having criminal histories. Thus, the argument goes, because the social media posts allegedly did not exist until after his time to file a postconviction motion had expired, the information constitutes newly discovered evidence. This argument is explicitly contradicted by

8

the Covert Ops Jury Investigations affidavit. According to the affidavit, the Facebook page was used to "*further confirm* that [the juror] had been connected to these family members during the time of Mr. Rivera's trial." (Emphasis added.) As to the juror's address being proximate to the scene of the crime, that address was verified via the Hillsborough County Clerk of Court's official records.

The source of the information purported to be newly discovered evidence—prison records, arrest records, marriage records—is that of *publicly available records*. Because the information is publicly available, it could have been discovered with due diligence. Because it could have been discovered with due diligence, it is not newly discovered evidence, and Mr. Rivera's motion must be procedurally barred as untimely under rule 3.850. As to Mr. Rivera's argument that he and his family did not have "the necessary financial resources to afford such an investigation until August 2021," this is not a permissible exception to the time limit imposed by rule 3.850(b). Moreover, inability to afford professional investigative services does not foreclose the reasonable possibility that nonprofessionals could access the same publicly available records.

When it comes to the question of nondisclosed information during voir dire, neither the State nor the defense has an affirmative duty to investigate whether the jurors' answers are truthful or whether they are concealing pertinent information responsive to questioning during voir dire. By virtue of the fact that such claims are premised on a juror's concealment of information, it is logical to presume that, typically, neither party will know whether there is juror misconduct until a party goes looking for it; the information that could reveal the misconduct is there all along, but it is not very likely to come to light unless someone investigates the juror through extraneous sources of information. Thus,

9

the time to exercise due diligence under rule 3.850 does not run from when a party finds out that material information was not disclosed—it runs from when the judgment and sentence become final, when either party can, of their own volition, investigate the matter. Moreover, the circumstances of this case are different than a typical scenario in which a defendant, years later, serendipitously learns of some previously undiscoverable fact that indicates a juror had concealed information or lied. Rather, this defendant went on a fishing expedition but did not do so until after the time period to file a postconviction motion had expired. The exception to the time bar applies when the information did not become ascertainable until after the deadline, not when the postconviction defendant only decided to start looking for it after the deadline. *See* Fla. R. Crim P. 3.850(b)(1) (providing an exception under circumstances in which the facts were "unknown . . . and *could not have been* ascertained by the exercise of due diligence" (emphasis added)).

In his reply brief, Mr. Rivera places emphasis on the inability of a defense attorney to know whether a juror is lying when questioned during voir dire. But this only underscores the conclusion that the defense team can and should conduct juror investigations during the proper time period. It certainly does not mean that a claim of juror misconduct can wait until a postconviction defendant gets curious enough long after the two-year time limit expires and then finally decides to hire someone to investigate possible juror misconduct. The same diligence the defendant showed over a decade later could have been shown before the time limit expired. And whatever efforts the professional juror investigators exerted could have been made by private investigators, lawyers, or diligent nonprofessionals prior to the expiration of the two-year time limit.

10

This opinion should not be read to imply that, but for the untimeliness of the rule 3.850 motion, Mr. Rivera would have established a valid postconviction juror misconduct claim entitling him to relief. We do not reach that question. Mr. Rivera failed to adequately allege facts in his untimely motion that indicate his claim is based on information that satisfies the test for newly discovered evidence. As support for his entitlement to an evidentiary hearing, Mr. Rivera cites authority that provides for an evidentiary hearing on the issue of actual bias, not on the issue of whether the putative newly discovered evidence could have been discovered earlier with due diligence. *See Smith v. Phillips*, 455 U.S. 209, 215 (1982) ("This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."). In this case, no postconviction hearing is necessary to determine whether the information constituted newly discovered evidence to avoid the time bar because the postconviction court could determine as a matter of law that it did not, based on the allegations of and the attachments to Mr. Rivera's postconviction motions. *See* Fla. R. Crim. P. 3.850(f)(5) ("If the motion is legally sufficient but all grounds in the motion can be conclusively resolved either as a matter of law or by reliance upon the records in the case, the motion shall be denied without a hearing by the entry of a final order.").

The postconviction court correctly concluded that Mr. Rivera's motion was filed after the two-year deadline in rule 3.850 and that Mr. Rivera did not establish that "the facts on which [his] claim is predicated were unknown to" him and his attorney and "could not have been ascertained by the exercise of due diligence." *See* Fla. R. Crim. P. 3.850(b)(1).

Affirmed.

ROTHSTEIN-YOUAKIM and LABRIT, JJ., Concur.

_____

Opinion subject to revision prior to official publication.